IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

JUUL LABS, INC.,
      a Delaware corporation,

      Plaintiff,

      v.

FLI HIGH, LLC,
      an Ohio limited liability
      company,

      Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO.: 1:21-cv-00872

JUDGE: James Gwin

**<u>MOTION OF PLAINTIFF JUUL LABS, INC. FOR ENTRY OF DEFAULT JUDGMENT
AND PERMANENT INJUNCTION AGAINST FLI HIGH, LLC</u>**

**TABLE OF CONTENTS**

I.  INTRODUCTION .................................................................................................... 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ............................................ 1

    A.  JLI's Business and Trademarks ................................................................... 1

    B.  Defendant's Sales of Counterfeit Goods ................................................. 2

    C.  Cease-and-Desist Correspondence to Defendant ................................... 3

    D.  Continued Sales of Counterfeit Goods ..................................................... 4

    E.  The Filing of This Action .......................................................................... 4

    F.  The Entry of Default Due to Lack of Response to the Complaint .......... 4

III.  DISCUSSION ...................................................................................................... 6

    A.  The Factual Allegations Establish Defendant's Liability for the Claims
    Asserted in JLI's Complaint. ............................................................................ 6

        1.  *Trademark Infringement (15 U.S.C §1114)* ..................................... 7

        2.  *False Designation of Origin and Unfair Competition (15 U.S.C. §1125(a))* ............... 11

        3.  *Trademark Infringement Under Common Law, Common Law Unfair Competition, and
            Deceptive Acts and Trade Practices Under Section 4165.02 of the Ohio Revised
            Code* ........................................................................................... 12

    B.  Remedies ...................................................................................................... 13

        1.  *Statutory Damages* .......................................................................... 14

        2.  *Post-Judgment Interest* .................................................................. 16

        3.  *Attorneys' Fees* .............................................................................. 17

        4.  *Costs* ............................................................................................... 17

        5.  *Injunctive Relief* ............................................................................ 17

IV.  CONCLUSION .................................................................................................... 20

TABLE OF AUTHORITIES

Cases

*Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 626 n. 2 (6th Cir. 2002) ................................................................................................................................................... 13

*Audi AG v. D'Amato*, 469 F.3d 534, 542-43, 545, 550 (6th Cir. 2006) ................................. passim

*Broadcasy Music, Inc. v. 4737 Dixie Highway, LLC*, No. 1:12-cv-506, 2012 WL 4794052, at *3 (S.D. Ohio Oct. 9, 2012) ............................................................................................................... 14

*Carson v. Here's Johnny Portable Toilets, Inc.*, 698 F.2d 831, 834 (6th Cir. 1983) ..................... 9

*Coach, Inc. v. Cellular Planet*, No. 2:09-cv-00241, 2010 WL 1853424, *5 (S.D. Ohio May 7, 2010) ........................................................................................................................................ 15

*Coach, Inc. v. Goodfellow*, 717 F.3d 498, 502, 505-06 (6th Cir. 2013) ............................ 7, 15, 17

*Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280, 283 (6th Cir. 1997) ............................................................................................................................... 7, 10

*eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391-92 (2006) ......................................... 18, 19

*ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915, 920 (6th Cir. 2003)............................................ 13

*Ford Motor Co. v. Cross*, 441 F.Supp.2d 837, 846, 852-53 (E.D. Mich. 2006)..................... 6, 16

*Gen. Motors Corp. v. Autovation Technologies, Inc.*, 317 F.Supp.2d 756, 761 (E.D. Mich. 2004) ......................................................................................................................................................... 8

*Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.*, 730 F.3d 494, 509 (6th Cir. 2013).... 9

*Heard v. Caruso*, 351 Fed.App'x. 1, 15-16 (6th Cir. 2009) ............................................................ 6

*Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1104-05 (6th Cir. 1991) ....................................................................................................................................................... 13

*JUUL Labs, Inc. v. HMN Inc.*, No. 2:20-cv-6570 (May 4, 2021)................................................. 16

*Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 383 (6th Cir. 2006)......... 19

*Lucky's Detroit, LLC v. Double L, Inc.*, 533 F.App'x 553, 555 (6th Cir. 2013) .......................... 18

*Microsoft Corp. v. Compusource Distributors, Inc.*, 115 F.Supp.2d 800, 811-12 (E.D. Mich. 2000) ................................................................................................................................... 14, 17

*Microsoft Corp. v. McGee*, 490 F.Supp.2d 874, 880-82 (S.D. Ohio 2007)............................ 13, 15

*New West Corp. v. NYM Co. of California, Inc.*, 595 F.2d 1194, 1201 (9th Cir. 1979)............... 12

*Ramada Franchise Sys., Inc.*, 220 F.R.D. 303, 305 (N.D. Ohio 2004) .......................................... 6

*Shepard Claims Serv., Inc. v. William Darrah & Assoc.*, 796 F.2d 190, 193 (6th Cir. 1986)........ 6

*Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 638 (1st Cir. 1992) ........ 7

*The Ohio State Univ. v. Skreened Ltd.*, 16 F.Supp.3d 905, 910 (S.D. Ohio 2014)........................ 7

*Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992) ........................................................................................................................................ 12

*U.S. v. Conces*, 507 F.3d 1028, 1038 (6th Cir. 2007) .................................................................... 6

*United States Patent and Trademark Office, et al., v. Booking.Com B. V.,* No. 19-46 (U.S. June 30, 2020), Slip Opinion at 4..................................................................................................... 8

*Victoria's Secret Stores v. Artco Equip. Co.*, 194 F.Supp.2d 704, 724 n. 8 (S.D. Ohio 2002)..... 13

*Visioneering Construction v. U.S. Fidelity and Guaranty*, 661 F.2d 119, 124 (6th Cir. 1981)...... 7

*Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1186 (6th Cir. 1988) .................................................... 9

Statutes

15 U.S.C. § 1057(b) ..................................................................................................................... 7, 8

15 U.S.C. § 1114.............................................................................................................................. 7

15 U.S.C. § 1116(a) ...................................................................................................................... 18

-ii-

15 U.S.C. § 1117(a) ............................................................................................. 17
15 U.S.C. § 1117(c)(1)......................................................................................... 14
15 U.S.C. § 1117(c)(2)......................................................................................... 14
15 U.S.C. § 1125 ................................................................................................. 11
28 U.S.C. § 1961 ................................................................................................. 16
Ohio Rev. Code § 4165.02................................................................................... 12

Other Authorities

Trademark Modernization Act of 2020 ................................................................ 18

Rules

Fed. R. Civ. P. 54(c) ........................................................................................... 20
Fed. R. Civ. P. 54(d) ........................................................................................... 17
Fed. R. Civ. P. 55(a) ............................................................................................. 4
Fed. R. Civ. P. 55(b) ...................................................................................... 6, 14

## BRIEF IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT JUDGMENT AND PERMANENT INJUNCTION

Plaintiff JUUL Labs, Inc. ("JLI") hereby submits its Motion for Entry of Default Judgment and Permanent Injunction ("Motion") against Defendant Fli High, LLC, an Ohio limited liability company ("Defendant").

## I.   INTRODUCTION

As described in detail herein, Defendant is in the business of selling counterfeit and diverted goods bearing JLI's trademarks.  Indeed, as described below, JLI is in possession of such products bearing JLI's trademarks which were purchased directly from Defendant. Moreover, Defendant knowingly continued to sell such trademark-infringing products after JLI had served a cease-and-desist correspondence upon Defendant.

Defendant has not filed a response to JLI's Complaint after being served properly. Therefore, JLI has no other recourse but to file the Motion which seeks reasonable relief, such as statutory damages and a permanent injunction enjoining Defendant's future acts of trademark infringement.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   JLI's Business and Trademarks

JLI is the designer, manufacturer, and distributor of JUUL-branded electronic nicotine delivery systems ("ENDS") and other related products (collectively, "the JUUL Products") [Docket No. 1, Complaint ("Compl."), ¶ 1.]  The JUUL Products include the JUUL system comprised of: (i) a device containing a rechargeable battery, control circuitry and a receptacle for a cartridge or pod, (ii) a disposable cartridge or pod ("JUULpod") that can be inserted into the device, has a heating chamber, and is prefilled with a proprietary nicotine e-liquid formulation, and (iii) a charger for charging the device, and related accessories. [Compl., ¶ 12.]

JLI is the exclusive owner of federally-registered, registration-pending, and common law trademarks.  For example, JLI owns the following United States Trademark Registrations:

| Depiction of Trademark | Registration No. and Date | (1) First Use (2) In Commerce |
|---|---|---|
| JUUL® | 4,818,664 (09-22-2015) | (1) 06-01-2015 (2) 06-01-2015 |
| JUUL® | 4,898,257 (02-09-2016) | (1) 06-01-2015 (2) 06-01-2015 |
| JUULpods® | 5,918,490 (11-26-2019) | (1) 06-30-2015 (2) 06-30-2015 |

[Compl., ¶ 10 and Exhibit A; Declaration of Randall J. Clement, Esq. filed concurrently herewith ("Clement Decl."), ¶ 2 and Exhibit A (trademark registration certificates).]  Hereinafter, JLI may sometimes utilize the phrase "the JUUL Marks" to refer to, collectively, JLI's federally-registered, applied-for, and common law trademarks.

The JUUL Marks appear clearly on JUUL Products, as well as the packaging and marketing materials related to such products. [Compl., ¶ 13.]  The JUUL Marks, as well as the goodwill arising from such trademarks, have never been abandoned. [Compl., ¶ 14.]  JLI continues to preserve and maintain its rights with respect to the JUUL Marks, including those registered with the United States Patent and Trademark Office. [Compl., ¶ 15.]

Due in large part to the substantial commercial success of the JUUL Products, the JUUL brand is well-known to consumers and has garnered extensive coverage by the media. [Compl., ¶ 16.]  Through the extensive use of the JUUL Marks, JLI has spent substantial time, money, and effort in developing consumer recognition and awareness of its brand. [Compl., ¶ 17.]  JLI markets JUUL Products nationwide to current adult smokers, including through its website, and sells its products through its nationwide authorized network. [*Id.*]  JLI also markets and sells its products internationally. [*Id.*]  JLI has built up and developed significant customer goodwill in its entire product line and the JUUL Products are immediately identified by the JUUL Marks. [*Id.*]

### B.    Defendant's Sales of Counterfeit Goods

Defendant is a limited liability company organized and existing under the laws of the State of Ohio and having its principal place of business at 3005 Clark Avenue, Cleveland, Ohio 44109. [Compl., ¶ 6.]  Defendant owns and operates the Fli High Smoke Shop retail business at that location. [*Id.*]

Beginning on a date that is currently unknown to JLI, Defendant, without the consent of JLI, has offered to sell and sold, and/or facilitated the offer and sale of, goods that were neither made by JLI nor by a manufacturer authorized by JLI, all by using reproductions, counterfeits, copies and/or colorable imitations of JUUL Products and the JUUL Marks ("Counterfeit Goods"). [Compl., ¶ 18.]

JLI has not authorized any third party, including Defendant, to make or sell ENDS or other types of products in connections with the JUUL Marks. [Compl., ¶ 19.]  The Counterfeit Goods sold by Defendant are not manufactured in accordance with JLI's own stringent quality controls but are instead manufactured outside of JLI's knowledge and control, using unknown substances and materials, in unknown locations and with unknown manufacturing requirements/controls. [*Id.*]

The Counterfeit Goods sold by Defendant bear counterfeit and confusingly similar imitations of the JUUL Marks in a manner likely to be confused with genuine JUUL Products. [Compl., ¶ 20.]

For example, on January 16, 2020, a representative of JLI made an in-person purchase of a Counterfeit Good for sale at the Fli High Smoke Shop retail business owned and operated by Defendant located at 3005 Clark Avenue, Cleveland, Ohio 44109 (the "Fli High Smoke Shop Business"). [Compl., ¶ 21 and Exhibit B; Clement Decl., ¶ 3 and Exhibit B (images of the product purchased on January 16, 2020).]  JLI subsequently inspected the product purchased on January 16, 2020 and confirmed that the purchased product is in fact a counterfeit product. [*Id.*]

### C.    Cease-and-Desist Correspondence to Defendant

On February 10, 2020, JLI's counsel mailed cease-and-desist correspondence to Defendant. [Compl., ¶¶ 22-23 and Exhibit C; Clement Decl., ¶ 4 and Exhibit C (the February 10, 2020 cease-and-desist correspondence).]

This cease-and-desist correspondence provided specific notice of the following, among other items: (i) JLI's confirmation that goods sold by Defendant are in fact counterfeit goods; (ii) JLI's demand that Defendant cease the sale, manufacture, marketing, and importation of

Counterfeit Goods and all other unauthorized use of JLI's intellectual property; (iii) JLI's ownership of the JUUL Marks; (iv) the statutory prohibition of the sale of Counterfeit Goods and all other unauthorized use of JLI's intellectual property, and JLI's right to seek monetary judgments against infringers; and (v) Defendant's willful infringement under federal law would be established by any further sales of Counterfeit Goods or any other unauthorized use of JLI's intellectual property. [*Id*.]

The February 10, 2020 cease-and-desist correspondence requested that Defendant contact JLI's counsel to discuss pre-litigation resolution of the legal issues arising from the sale of the Counterfeit Goods and all other unauthorized use of JLI's intellectual property. [*Id*.]  Defendant, however, did not contact JLI's counsel. [*Id*.]

## D. Continued Sales of Counterfeit Goods

On March 5, 2020, a representative of JLI made an in-person purchase of a Counterfeit Good for sale at the Fli High Smoke Shop Business. [Compl., ¶ 24 and Exhibit D; Clement Decl., ¶ 5 and Exhibit D (images of the product purchased on March 5, 2020).]  JLI subsequently inspected the product purchased on March 5, 2020 and confirmed that the purchased product is in fact a counterfeit product. [*Id*.]

## E. The Filing of This Action

On April 27, 2021, JLI filed the Complaint to initiate this action. [Docket No. 1; Clement Decl., ¶ 6 and Exhibit E.]  The Complaint asserts the following claims against Defendant: (i) Trademark Infringement – Counterfeit Goods (15 U.S.C §1114); (ii) False Designation of Origin – Counterfeit Goods (15 U.S.C. §1125(a)); (iii) Unfair Competition – Counterfeit Goods (15 U.S.C. §1125(a)); (iv) Trademark Infringement Under Common Law; (v) Common Law Unfair Competition; and (vi) Deceptive Acts and Trade Practices Under Section 4165.02 of the Ohio Revised Code. [*Id*.]

## F. The Entry of Default Due to Lack of Response to the Complaint

JLI has fulfilled its obligations under Fed. R. Civ. P. 55(a) with respect to the entry of default by the Clerk of the Court.

-4-

The entry of default was proper.  As shown in the record of this matter, the Clerk of the Court performed certified mail service to Defendant on May 12, 2021.  [Docket No. 9; Declaration of Lloyd Pierre-Louis, Esq. filed concurrently herewith ("Pierre-Louis Decl."), ¶ 2 and Exhibit A.]  Because Defendant did not file a response to the Complaint, the Clerk of this Court correctly entered an Entry of Default as to Defendant on June 9, 2021. [Docket No. 13; Pierre-Louis Decl., ¶ 3 and Exhibit B.][1]

Due to Defendant's default, the assertions in the Complaint remain unopposed, including the factual history described above and the following further assertions in the Complaint:

- Defendant is not authorized and never has been authorized by JLI to produce, manufacture, distribute, market, offer for sale, and/or sell merchandise bearing the JUUL Marks, or any variations thereof. [Compl., ¶ 25.]  JLI has no control over the nature, quality, or pricing of Defendant's products or marketing, or any other aspect of the business conduct of Defendant. [*Id*.]

- Defendant uses words, symbols, images, designs, and names confusingly similar or identical to the JUUL Marks to confuse consumers and aid in the promotion and sales of the Counterfeit Goods. [Compl., ¶ 26.]

- Defendant's counterfeit sales outlined above are likely to deceive, confuse, and mislead purchasers and prospective purchasers into believing that the products are authorized by JLI. [Compl., ¶ 27.]  Purchasers and prospective purchasers using or simply viewing Defendant's Counterfeit Goods and who perceive a defect, lack of quality, or any other irregularity are likely to mistakenly attribute the issue to JLI, to the detriment of JLI's business and the JUUL brand. [*Id*.]

- The likelihood of confusion, mistake, and deception brought about by Defendant's misappropriation of the JUUL Marks is causing irreparable harm to the goodwill

---

[1]  Defendant does not belong to any category of persons entitled to heightened protection from default judgment.  Defendant is an Ohio limited liability company and therefore is not an infant, incompetent person, or a person serving in the military. [Clement Decl., ¶ 7.]

symbolized by the JUUL Marks and the reputation for quality that said marks embody.
[Compl., ¶ 28.]

- Defendant's unauthorized use of the JUUL Marks began after JLI legally established the
  existence and significant value of such trademarks, including after JLI's adoption and use
  of the JUUL Marks and after JLI obtained the trademark registrations described above.
  [Compl., ¶ 29.]

## III. DISCUSSION

Rule 55 of the Federal Rules of Civil Procedure provides that the Court may order default judgment following the entry of default by the Clerk of the Court.  Fed. R. Civ. P. 55(b); *Heard v. Caruso*, 351 Fed.App'x. 1, 15-16 (6th Cir. 2009); *Shepard Claims Serv., Inc. v. William Darrah & Assoc.*, 796 F.2d 190, 193 (6th Cir. 1986) ("entry of default is just the first procedural step on the road to obtaining a default judgment"); *Ramada Franchise Sys., Inc.*, 220 F.R.D. 303, 305 (N.D. Ohio 2004) ("Entry of a default ... is a prerequisite to entry of a default judgment under Rule 55(b)").  For the following reasons, the Court should enter default judgment against Defendant.

### A.   The Factual Allegations Establish Defendant's Liability for the Claims Asserted in JLI's Complaint.

The merits of JLI's case and the sufficiency of JLI's Complaint warrant the entry of default judgment against Defendant.

In the context of a motion for default judgment, *a court accepts the well-pleaded allegations pertaining to liability in a complaint as true* because the defendant is deemed to have admitted all such allegations.  *U.S. v. Conces*, 507 F.3d 1028, 1038 (6th Cir. 2007) (upon the entry of a default judgment, the defendant's liability was deemed to be established as a matter of law and the factual allegations of the complaint were no longer open to dispute) (citations omitted); *Ford Motor Co. v. Cross*, 441 F.Supp.2d 837, 846 (E.D. Mich. 2006) ("Once a default is entered against a defendant, that party is deemed to have admitted all of the well pleaded

-6-

allegations in the Complaint, including jurisdictional averments.") (citing *Visioneering Construction v. U.S. Fidelity and Guaranty*, 661 F.2d 119, 124 (6th Cir. 1981)).

### 1.    Trademark Infringement (15 U.S.C §1114)

The Lanham Act provides remedies for unfair and misleading use of trademarks, including sales of counterfeit goods.[2]

15 U.S.C. § 1114 ("Section 1114") prohibits using in commerce "any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a).

To establish trademark infringement under Section 1114, a plaintiff must show that: (1) it owns a valid trademark; (2) the defendant used the trademark "in commerce" without the plaintiff's authorization; (3) the defendant used the plaintiff's trademarks, or an imitation thereof, "in connection with the sale, offering for sale, distribution, or advertising" of goods and services; and (4) the defendant's use of the plaintiff's trademarks is likely to cause consumer confusion. *The Ohio State Univ. v. Skreened Ltd.*, 16 F.Supp.3d 905, 910 (S.D. Ohio 2014) (citing 15 U.S.C. § 1114); *see also Coach, Inc. v. Goodfellow*, 717 F.3d 498, 502 (6th Cir. 2013) (citation omitted).  The "touchstone of liability" for trademark infringement under Section 1114 "is whether defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *The Ohio State Univ. v. Skreened Ltd.*, 16 F.Supp.3d at 910 (quoting *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997)).

Regarding the first element, registered trademarks are entitled to a presumption of ownership and validity.  *See* 15 U.S.C. § 1057(b) ("A certificate of registration of a mark . . . shall be prima facie evidence of the validity of the registered mark . . .").

---

[2]  The Lanham Act is grounded in two central policy concerns: (i) protecting consumers from confusion; and (ii) protecting the trademark owner's goodwill to allow the trademark holder to shape the contours of its reputation. *See Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 636 (1st Cir. 1992).

Here, the three JUUL Marks upon which JLI bases the Complaint are registered with the United States Patent and Trademark Office (the "USPTO"). [Clement Decl., ¶ 2 and Exhibit A (trademark registration certificates).]  JLI's certificates of registration for the JUUL Marks from the USPTO are prima facie evidence of the validity of the JUUL Marks, JLI's ownership of the marks, and JLI's exclusive right to use the marks in commerce or in connection with the goods or services specified in the certificates.  15 U.S.C. § 1057(b); *see also, United States Patent and Trademark Office, et al., v. Booking.Com B. V.,* No. 19-46 (U.S. June 30, 2020), Slip Opinion at 4 ("The owner of a mark on the principal register enjoys 'valuable benefits,' including a presumption that the mark is valid.") (citation omitted).

In light of the presumption given to JLI's federally registered marks combined with Defendant's default, there is no dispute that JLI has satisfied the first element of demonstrating ownership of three valid marks entitled to the protection of the law.

Regarding the second and third elements, the Complaint and this Motion establish clearly Defendant's use of counterfeit imitations of the JUUL Marks in commerce related to retail sales transactions involving Counterfeit Goods.

Regarding the fourth element, courts in the Sixth Circuit have generally recognized that when the defendant's business involves use of counterfeit imitation marks (like in this matter), likelihood of confusion is clear and a multi-factored balancing analysis concerning the likelihood of confusion is unnecessary.  *See e.g., Gen. Motors Corp. v. Autovation Technologies, Inc.*, 317 F.Supp.2d 756, 761 (E.D. Mich. 2004) (the Sixth Circuit has noted "a likelihood of confusion is presumed when a defendant intentionally copies a trademark design with the intent to derive a benefit from the reputation of another.") (internal quotation marks and citation omitted).

Counterfeit goods, by their very nature, cause confusion.  As pleaded in the Complaint, Defendant used counterfeit marks that are *identical* to the registered, distinctive, and valuable JUUL Marks, and this use intended to cause and likely caused confusion, mistake, or deception of consumers who believed Defendant's Counterfeit Goods were genuine or authorized JUUL Products.

Further, given Defendant's default, Defendant admits JLI's allegations of consumer confusion.  Indeed, all customers of Defendant incorrectly believe Defendant is selling genuine and authorized JUUL Products when purchasing Counterfeit Goods.  All such consumers are therefore confused by all such transactions with Defendant involving the inherently-confusing counterfeit marks.  Defendant's sale of Counterfeit Goods concerns the use of marks that are *identical* to those found on JUUL Products.  The Complaint accurately asserts that Defendant used the JUUL Marks to pass off their Counterfeit Goods as those of JLI, without JLI's permission and in a manner that resulted in actual confusion among JLI's customers.

In any event, application of precedential analytical factors to the factual allegations of the Complaint establishes a likelihood of confusion.

In determining whether a likelihood of confusion exists, courts consider the following non-exhaustive list of factors: "(1) strength of plaintiff's mark; (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing of channels used; (6) degree of purchaser care; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion in selecting the mark."  *Audi AG v. D'Amato*, 469 F.3d 534, 542-43 (6th Cir. 2006) (citations omitted).  "The general concept underlying likelihood of confusion is that the public believe that the mark's owner sponsored or otherwise approved of the use of the trademark."  *Carson v. Here's Johnny Portable Toilets, Inc*., 698 F.2d 831, 834 (6th Cir. 1983) (internal quotation marks and citation omitted).

No single factor is dispositive and a finding of a likelihood of confusion does not require a positive finding on a majority of these factors.  *Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.*, 730 F.3d 494, 509 (6th Cir. 2013) (because these factors are helpful guides rather than rigid requirements, these factors are not always weighed consistently and a particular factor might receive a greater or lesser weight depending on the circumstances) (citation omitted); *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1186 (6th Cir. 1988) ("[A] plaintiff need not show that all, or even most, of the factors listed are present in any particular case to be successful.");.

First, Defendant's default renders undisputed all statements in the Complaint explaining the great strength of the JUUL Marks.  The Complaint details the types of marks infringed as follows: (i) the JUUL Marks are distinctive and federally registered; (ii) JLI is the owner of all goodwill associated with the JUUL Marks, which has developed through JLI's diligent and expensive efforts to promote its products in commerce in the United States and to have its brand acquire secondary meaning; (iii) the JUUL brand has achieved substantial commercial success and is well-known to consumers; (iv) JLI has spent substantial time, money, and effort in developing consumer recognition and awareness of its JUUL brand; (v) JLI has built up and developed significant customer goodwill in its entire product line and the JUUL Products are immediately identified by the JUUL Marks; and (vi) the JUUL Marks strongly identify JUUL-branded goods as emanating directly from JLI.  In sum, the JUUL Marks are world-famous and Defendant has provided no evidence to the contrary.  *See Audi AG v. D'Amato*, 469 F.3d 534, 543 (6th Cir. 2006) ("The more distinct a mark, the more likely is the confusion resulting from its infringement, and therefore the more protection it is due.") (citation omitted).

Second, the factors addressing the similarity of the marks and products at issue strongly support establishment of a likelihood of confusion.  *See Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 283 (6th Cir. 1997) ( "Similarity of marks is a factor of considerable weight.") (citation omitted).  Indeed, Defendant's sale of Counterfeit Goods concerns the use of marks that are *identical* to those found on JUUL Products.  The Complaint establishes that Defendant's use of identical versions of the JUUL Marks and sales of Counterfeit Goods intended to be identical versions of JUUL Products, without JLI's consent, create a false impression that Defendant was authorized by JLI to use the marks.  These "similarity" factors should be highly influential toward the overall determination of likelihood of confusion in this context where Defendant sold Counterfeit Goods.

Application of the remaining factors supports a determination that Defendant's sales of Counterfeit Goods likely cause consumer confusion.  Defendant sells Counterfeit Goods through the same retail channels as genuine JUUL Products and Defendant sells to the same prospective

-10-

consumers as JLI.  *See Audi AG v. D'Amato*, 469 F.3d at 543 (the parties' goods were related because they were "marketed and consumed such that buyers are likely to believe that the [goods], similarly marked, come from the same source, or are somehow connected with or sponsored by a common company") (citation omitted).

Further, the typical over-the-counter purchase of a JUUL Product does not involve a sophisticated product-review process or other product-specific research by a consumer. Moreover, Defendant's use of inherently-confusing and identical counterfeit marks supports a presumption of actual confusion of consumers and a determination that Defendant used such counterfeit marks in bad faith.  *Id.* (absence of actual confusion evidence is inconsequential and a mark adopted with the intent of deriving benefit from the reputation of the plaintiff may alone be sufficient to justify the inference that there is confusing similarity) (citations omitted).

Finally, the likelihood of expansion of product lines is established because the Counterfeit Goods are *identical* imitations of JUUL Products.  *Id.* at 545 (the likelihood of expansion of product lines need not be analyzed because the product lines of the parties already overlap) (citation omitted).

In sum, the Complaint asserts facts that sufficiently establish Defendant's liability under Section 1114.

2. **False Designation of Origin and Unfair Competition (15 U.S.C. §1125(a))**

Under 15 U.S.C. § 1125(a) ("Section 1125(a)"), any person who uses in commerce "any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact" in a manner likely to cause confusion, mistake, or deception as to the "affiliation, connection, or association" of that person or "as to the origin, sponsorship, or approval" of that person's goods or services by another person is liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.  15 U.S.C. § 1125(a)(1)(A).

As in the Section 1114 infringement analysis above, when a registered trademark holder brings claims under Section 1125(a) the analysis focuses on whether the plaintiff establishes a likelihood of confusion.  "[U]nder the Lanham Act, the ultimate test is whether the public is likely to be deceived or confused by the similarity of the marks. . . . Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical – is there a 'likelihood of confusion?'"  *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992) (quoting *New West Corp. v. NYM Co. of California, Inc.*, 595 F.2d 1194, 1201 (9th Cir. 1979)).

The Sixth Circuit has adopted this standard and held that claims brought under Sections 1114 and 1125(a) have the same elements.  *Audi AG v. D'Amato*, 469 F.3d at 542 (6th Cir. 2006) (under the Lanham Act, the Sixth Circuit "use[s] the same test to decide whether there has been trademark infringement, unfair competition, or false designation of origin: the likelihood of confusion between the two marks.") (citing *Two Pesos, Inc.*).

Here, the Complaint and this Motion establish Defendant's liability to JLI under Section 1125(a).  Defendant's sales of Counterfeit Goods were intended to and likely to cause consumers to believe that JLI authorized, sponsored, approved, or endorsed the Counterfeit Goods and that the Counterfeit Goods were genuine JUUL Products affiliated with JLI.  Indeed, counterfeit goods, by their very nature, cause confusion.  As pleaded in the Complaint, Defendant used counterfeit marks that are *identical* to the registered, distinctive, and valuable JUUL Marks, and this use intended to cause and likely caused influential confusion, mistake, or deception of consumers who believed wrongly that Defendant's Counterfeit Goods were genuine and authorized JUUL Products approved by and affiliated with JLI.

### 3.      Trademark Infringement Under Common Law, Common Law Unfair Competition, and Deceptive Acts and Trade Practices Under Section 4165.02 of the Ohio Revised Code

Concerning JLI's claims for trademark infringement under common law, common law unfair competition, and violation of Ohio Rev. Code § 4165.02 ("Section 4165.02"), the analysis

of these claims is the same as that for JLI's claims brought under the Lanham Act.  This is because these non-Lanham Act claims share common allegations and elements with the Lanham Act claims, namely allegations that Defendant's sales of Counterfeit Goods falsely represented to consumers and likely caused consumer confusion as to the source of the goods.  *See Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1104-05 (6th Cir. 1991); *Microsoft Corp. v. McGee*, 490 F.Supp.2d 874, 880-81 (S.D. Ohio 2007) (citing *ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915, 920 (6th Cir. 2003), *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 626 n. 2 (6th Cir. 2002), and *Victoria's Secret Stores v. Artco Equip. Co.*, 194 F.Supp.2d 704, 724 n. 8 (S.D. Ohio 2002) ("The Court notes the same analysis applies to [federal] trademark infringement, unfair competition, Ohio common law, and Ohio's deceptive trade practices statutes")).

Given the explanation above as to JLI's sufficient pleading of a likelihood of confusion to maintain a trademark infringement action against Defendant, JLI has similarly pled sufficiently its claims for trademark infringement under common law, common law unfair competition, and violation of Section 4165.02.

**B.**   **Remedies**

Defendant has engaged in willful use of the counterfeit JUUL Marks which justifies the imposition of a substantial monetary award.  Defendant's infringing sales of Counterfeit Goods utilized the JUUL Marks, *and such sales continued even after JLI counsel sent cease-and-desist correspondence to Defendant*.  It is undisputed that Defendant's conduct deceived consumers and caused, or at least was very likely to have caused, consumer confusion and mistake.

Further, denial of the Motion would cause great prejudice to JLI in terms of its ability to seek remedy for Defendant's wrongful acts.  Present circumstances between the parties dictate that JLI will be unable to collect any monetary remedy from Defendant without a judgment for damages.  Moreover, JLI lacks other forums or avenues of recourse outside of this Court to recover damages for its injuries or to prevent Defendant from causing further harm.  Finally,

-13-

denial of the Motion and the remedies sought by JLI would equate to Defendant benefiting from its failure to comply with the judicial process or participate in any way in the present litigation.

### 1. Statutory Damages

JLI elects to seek statutory damages in this action involving counterfeit sales.[3] The Lanham Act provides for an award of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just . . . ." 15 U.S.C. § 1117(c)(1). Where willfulness is demonstrated, however, a maximum award of $2,000,000 per counterfeit mark per type of good sold may be awarded. 15 U.S.C. § 1117(c)(2).

The Court has broad discretion in determining the amount of statutory damages to be awarded. *Microsoft Corp. v. Compusource Distributors, Inc.*, 115 F.Supp.2d 800, 811-12 (E.D. Mich. 2000) (awarding plaintiff $50,000 in statutory damages for each of the counterfeited marks).[4]

To determine what statutory damages award is just, certain courts have looked to the following factors, drawn from copyright law: the defendant's profits; the defendant's saved expenses; the plaintiff's lost revenues; and the defendant's state of mind. *See e.g., Broadcasy Music, Inc. v. 4737 Dixie Highway, LLC*, No. 1:12-cv-506, 2012 WL 4794052, at *3 (S.D. Ohio Oct. 9, 2012).

---

[3]   The Motion does not seek adjudication of other forms of available monetary damages to JLI, such as actual damages, Defendant's profits, and treble damages related thereto. In light of JLI's request for substantial and warranted statutory damages, JLI chooses not to incur the further costs to present the evidentiary bases for such other available monetary damages and chooses not to burden the Court with further evidentiary adjudication of same.

[4]   It is the discretion of the Court whether a hearing on damages is necessary. Fed. R. Civ. P. 55(b)(2). Here, JLI's well-pleaded allegations in the Complaint and this Motion establish Defendant's violations of the Lanham Act for sales of Counterfeit Goods and should allow for an award of statutory damages without a hearing. District courts within the Sixth Circuit and elsewhere throughout the United States have awarded statutory damages without a hearing when ruling on motions for entry of default judgment relating to sales of counterfeit products.

In this case, however, there is no evidence regarding Defendant's profits, Defendant's saved expenses, or Plaintiff's lost revenues because Defendant did not file an answer, produce records, or participate in the lawsuit. "Statutory damages are appropriate in default judgment cases because the information needed to prove actual damages is within the infringers' control and is not disclosed." *Microsoft Corp. v. McGee*, 490 F.Supp.2d 874, 882 (S.D. Ohio 2007) (citations omitted). Indeed, the statutory-damages monetary remedy was enacted as an alternative to calculating damages in counterfeiting actions through analysis of the profits generated by the defendants. This is because such counterfeiting businesses often have records that are inadequate or intentionally deceptive.

However, concerning the factor relating to Defendant's state of mind, Defendant's trademark infringement is deemed willful by virtue of Defendant's default and admission of the allegations of willful intent. It is logical to assume an innocent party would presumably have made an effort to defend itself. *See Coach, Inc. v. Cellular Planet*, No. 2:09-cv-00241, 2010 WL 1853424, *5 (S.D. Ohio May 7, 2010) ("A court may infer that a defendant's infringement is willful from the defendant's failure to defend."); *Microsoft Corp. v. McGee*, 490 F.Supp.2d at 880 (S.D. Ohio 2007) ("[A] court may infer willfulness from defendant's default."). Furthermore, the Complaint and this Motion establish Defendant's willful intent through evidence of Defendant's continued sales of Counterfeit Goods after receiving notice from JLI in the form of a cease-and-desist correspondence. *See Coach, Inc. v. Goodfellow*, 717 F.3d 498, 506 (6th Cir. 2013).

Finally, Defendant's actions to procure Counterfeit Goods for resale evidence Defendant's willful intent. Defendant must have obtained the Counterfeit Goods from unauthorized suppliers or importers because JLI's authorized United States distribution network does not deal in such goods. Further, the Counterfeit Goods were flavors of JUULpods® that were not available from authorized distributors at the time of resell due to governing regulations. [Clement Decl., ¶¶ 3 and 5 and Exhibits B and D (images of the products purchased on January 16, 2020 and March 5, 2020).]

Of note, statutory damages are designed not only to compensate injuries sustained but also to discourage wrongful conduct by the defendant and others. *See Ford Motor Co. v. Cross*, 441 F.Supp.2d 837, 852-53 (E.D. Mich. 2006). An award of statutory damages against Defendant will discourage Defendant and others from using the JUUL Marks and selling Counterfeit Goods in the future.

Concerning the calculation of statutory damages, Defendant's default prevents a calculation based on business data in Defendant's possession. Defendant has not participated in this action and has not provided records relating to sales and profits. Undisputedly, however, JLI has created great commercial value in the JUUL Marks, Defendant infringed and unfairly competed willfully, and a substantial statutory damages award will discourage Defendant and deter other counterfeits sales.

In consideration of the present circumstance, JLI respectfully suggests a statutory damages award in the amount of $150,000, which can be equated to $50,000 for each of the three JUUL Marks identified in the Complaint. While the statute, 15 U.S.C. §1117(c), allows JLI to seek up to $2,000,000 in statutory damages for each of the three JUUL Marks identified in the Complaint for a total award of $6,000,000, JLI believes a $150,000 statutory-damages award is in line with other statutory-damages awards determined by the Court in other similar counterfeit-sales actions, is commensurate with a reasonable multiple of the estimated revenues generated by Defendant's business, and will serve the policies of compensating JLI, punishing Defendant, and deterring others from similar misconduct.[5]

### 2. Post-Judgment Interest

JLI requests an award of post-judgment interest at the statutory rate. "Interest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a).

---

[5]  The Southern District of Ohio recently awarded $150,000 in statutory damages to JLI when granting a Motion for Entry of Default Judgment and Permanent Injunction substantially similar to the present Motion. *See JUUL Labs, Inc. v. HMN Inc.*, No. 2:20-cv-6570 (May 4, 2021).

### 3.    Attorneys' Fees

The Lanham Act permits an award of attorneys' fees to the prevailing party in "exceptional cases."   15 U.S.C. § 1117(a).    "Although this provision does not define 'exceptional,' [the Sixth Circuit] ha[s] held that a case is not exceptional where the trademark infringement was not malicious, willful, fraudulent, or deliberate."  *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 505 (6th Cir. 2013) (internal quotation marks and citation omitted); *see also Microsoft Corp. v. Compusource Distrib. Inc.*, 115 F.Supp.2d 800, 812 (E.D. Mich. 2000) (under the Lanham Act, the Court may award attorney's fees in addition to statutory damages where the infringement was willful) (citation omitted).

As explained above, Defendant's admissions by default, the unopposed assertions of the Complaint, and the evidence presented with this Motion establish Defendant's deliberate and willful trademark infringement through its *continued* sales of Counterfeit Goods.  Thus, Plaintiff is entitled to attorneys' fees under 15 U.S.C. § 1117(a).  *See Coach, Inc. v. Goodfellow*, 717 F.3d at 506 (the matter was an "exceptional case" involving willful violations of the Lanham Act that permitted an award of attorneys' fees because the defendant had notice of its ongoing infringing activity yet continued to infringe).

Therefore, JLI requests an award of its reasonable attorneys' fees.  JLI requests an award of attorneys' fees in the amount of $7,417.50. [Clement Decl., ¶ 8; Pierre-Louis Decl., ¶ 4.]

### 4.    Costs

Pursuant to Fed. R. Civ. P. 54(d)(1) and 15 U.S.C. § 1117(a), JLI is entitled to judgment against Defendant for recovery of the total costs JLI has incurred in this action.  JLI requests an award of costs in the amount of $402.00. [Pierre-Louis Decl., ¶ 5.]

### 5.    Injunctive Relief

Pursuant to 15 U.S.C. § 1116 and Ohio Rev. Code § 4165.03, JLI requests the Court enter a permanent injunction to prevent any future trademark infringement by Defendant.  Under the Lanham Act, a court "shall have power to grant injunctions, according to the principles of equity

and upon such terms as the court may deem reasonable, to prevent the violation of any right [of a trademark holder]."  15 U.S.C. § 1116(a).

Permanent injunctive relief is appropriate where a plaintiff that successfully brings its claims, including if by entry of default, demonstrates: (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardships favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest.  *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391-92 (2006) (citations omitted); *see also Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006) (citing *eBay, Inc.*).

Here, JLI has established these factors and the appropriateness of injunctive relief.

Concerning irreparable injury, the Trademark Modernization Act of 2020, which was part of the Consolidated Appropriations Act of 2021 enacted on December 27, 2020, has clarified that upon a finding of a violation of the Lanham Act, including violations for trademark infringement and unfair competition, a plaintiff seeking a permanent injunction is entitled to a rebuttable presumption of irreparable harm.  Here, there is no rebuttal to the presumption of irreparable harm.

Irreparable harm is further established by JLI's threatened loss of prospective customers, goodwill, and control over its business reputation due to Defendant's unauthorized use of its protected and registered JUUL Marks in confusing manner.  *See Lucky's Detroit, LLC v. Double L, Inc.*, 533 F.App'x 553, 555 (6th Cir. 2013) ("In trademark infringement cases, a likelihood of confusion or possible risk to the requesting party's reputation satisfies the irreparable injury requirement.") (citation omitted); *Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1056 (6th Cir. 1999) (because irreparable injury ordinarily follows the establishment of likelihood of confusion, no particular finding of a likelihood of irreparable harm is necessary for injunctive relief in trademark infringement or unfair competition cases) (citations omitted).  As well-pleaded in the Complaint, Defendant's sales of Counterfeit Goods damage JLI's goodwill, JLI's reputation, and JLI's ability to control and protect the JUUL Marks.

-18-

Second, statutory damages alone will not fully remedy JLI's injury and do not address Defendant's ability to further violate JLI's intellectual property.  *See eBay, Inc.*, 547 U.S. at 391. Without an injunction, JLI has no adequate remedy at law concerning Defendant's future actions to sell Counterfeit Goods.  This is especially the case because Defendant's counterfeiting activity continued despite JLI's communications to Defendant to cease and desist.  *See Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006) (because of the potential of future harm to the plaintiff if the defendant continues to violate the plaintiff's trademark rights, there is no adequate remedy at law).

Third, the balance of hardships favors the equitable remedy of a permanent injunction given that JLI filed this action due to repeated infringements by Defendant and now reasonably requests a permanent injunction.  Indeed, enjoining Defendant from infringing business practices does not put any undue burden on Defendant.  *Id*. (the defendant faces no hardship from refraining from its willful violations of the Lanham Act, but the plaintiff would continue to suffer hardship from any continued violations, including damage to its reputation and loss of sales).

Finally, there is a greater public interest in protecting the rights of a plaintiff trademark owner than in allowing an infringing defendant to continue using the plaintiff's trademarks. Particularly in this action, the issuance of a permanent injunction is in the public's interest because (i) Defendant's sales of Counterfeit Goods inherently confuse consumers who believe the products are genuine goods originating from JLI, and (ii) the Counterfeit Goods are not manufactured in accordance with JLI's own stringent quality controls – the goods are instead manufactured using unknown substances and with unknown manufacturing controls.  *Id*. ("It was in the public's interest to issue the injunction in order to prevent consumers from being misled."); *see also Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc*., 453 F.3d 377, 383 (6th Cir. 2006) ("Such an injunction against the sale of counterfeit cigarette packages would advance two fundamental purposes of trademark law: preventing consumer confusion and deception in the marketplace and protecting the trademark holder's property interest in the mark.") (citation omitted).

For the foregoing reasons, JLI requests the Court enter the following permanent injunction as requested in the Complaint:

> An injunction by this Court ordering that Defendant, and its respective agents, servants, employees, and representatives and all persons in active concert and participation with them, to be permanently restrained and enjoined from:
>
> (i) engaging or continuing to engage in infringing, unlawful, unfair, or fraudulent business acts or practices relating to trademarks owned by JUUL Labs, Inc, including the marketing, sale, distribution, and/or other dealing in any non-genuine JUUL products, including fake counterfeit products or unauthorized grey-market products;
>
> (ii) using without permission any mark or other intellectual property right of JUUL Labs, Inc.;
>
> (iii) acting to infringe trademarks owned by JUUL Labs, Inc.;
>
> (iv) falsely designating the origin of any product to be from JUUL Labs, Inc.;
>
> (v) engaging in unfair competition with JUUL Labs, Inc.; or
>
> (vi) acting in any other manner to derogate JUUL Labs, Inc.'s intellectual property rights.

Fed. R. Civ. P. 54(c); Complaint, Request for Relief No. 6.

## IV.    CONCLUSION

For the foregoing reasons, JLI respectfully requests the Court grant the Motion in its favor against Defendant Fli High, LLC, an Ohio limited liability company, and award statutory damages pursuant to the Lanham Act in the amount of $150,000, enter a permanent injunction against Defendant restraining it from engaging in future infringement of the JUUL Marks, and award whatever other relief the Court deems just and proper.[6]

---

[6]  JLI has filed a proposed form of Default Judgment concurrently herewith. [Clement Decl., ¶ 9 and Exhibit F.]

-20-

July 15, 2021                              Respectfully submitted,

                                           s/Lloyd Pierre-Louis
                                           Lloyd Pierre-Louis (0068086)
                                           Dickinson Wright PLLC
                                           150 E. Gay Street, Suite 2400
                                           Columbus, OH 43215
                                           (614) 591-5490, T
                                           (844) 670-6009, F
                                           Lpierre-louis@dickinsonwright.com
                                           *Counsel for Plaintiff, JUUL Labs, Inc.*